Sanmathi Dev, Esq. – 01160-2011
Geoffrey N. Stark, Esq. – 01811-2010
CAPEHART & SCATCHARD, P.A.
8000 Midlantic Drive, Suite 300S
PO Box 5016
Mount Laurel, N.J.  08054-5016
(856) 234-6800
Attorneys for Plaintiff, Haddonfield Borough Board of Education

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| HADDONFIELD BOROUGH BOARD OF EDUCATION,<br><br>    Plaintiff,<br><br> v.<br><br>M.L. and T.N. o/b/o J.N.,<br><br>    Defendants. | Civil Action No. _____<br><br><br>**COMPLAINT SEEKING PARTIAL APPEAL OF THE JUNE 29, 2023 FINAL DECISION OF THE HON. TRICIA M. CALIGUIRE, A.L.J., AND SEEKING ENFORCEMENT OF THE ALJ'S JUNE 29, 2023 ORDER REGARDING EVALUATIONS OF J.N.** |

Plaintiff, Haddonfield Borough Board of Education ("Plaintiff," "Board," or "District"), is a Type II public school district and body politic organized by N.J.S.A. 18A:10-1 et seq., with its principal place of business at 1 Lincoln Ave, Haddonfield, Camden County, New Jersey 08033, by way of Complaint against the Defendants, M.L. and T.N. o/b/o J.N., states as follows:

**NATURE OF CASE AND JURISDICTION**

1. This Court has jurisdiction to hear and determine this action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., and corresponding New Jersey statutes, N.J.S.A. 18A:46-1 et seq., and implementing federal and state

regulations. Jurisdiction is based on 28 U.S.C. § 1331 and 28 U.S.C. § 1343 as it involves a question of federal law.  Supplemental jurisdiction is invoked under 28 U.S.C. § 1367 over claims under State law.

2.      This case comes before the Court pursuant to 20 U.S.C. § 1415(i)(A) and/or N.J.A.C. 6A:14-2.7(v) following the final decision issued by the Honorable Tricia M. Caliguire, Administrative Law Judge ("ALJ"), on June 29, 2023, in a special education due process proceeding under the IDEA initiated by the Board in the matter captioned Haddonfield Borough Board of Education v. M.L. and T.N. o/b/o J.N., EDS 03372-22. A copy of the June 29, 2023, final decision is attached hereto as **Exhibit A**.

3.      The Board appeals portions of ALJ Caliguire's June 29, 2023, final decision which dismissed the Board's due process petition, denied the Board's request to remove J.N. from the District and place him at an out-of-district school, required that J.N. be returned to the District from his interim placement of homebound instruction, and required that J.N. immediately begin an extended school year ("ESY") program in the District.

4.      The Board also seeks an order enforcing that portion of the ALJ's Decision which required that the District conduct comprehensive evaluations of J.N., and further requiring that Defendants consent to the District's conduct of such evaluations.

5.      The Board is aggrieved by ALJ Caliguire's June 29, 2023, decision as it contained numerous errors of law and fact.

6.      The Board is aggrieved by Defendants' unjustifiable withholding of consent to conduct a comprehensive reevaluation of J.N.

7.      The Board has the right to bring this instant civil action to appeal ALJ Caliguire's June 29, 2023 decision.  20 U.S.C. § 1415(i)(2)(A); N.J.A.C. 6A:14-2.7(v).

8.  The Board has the right to bring this action to seek enforcement of ALJ Caliguire's June 29, 2023 Order that Defendants consent to the District's reevaluation of J.N.  N.J.A.C. 6A:14-2.7(t).

## VENUE

9.  Venue is conferred pursuant to 20 U.S.C. §1391(a), (b), and (c) in that venue is provided by law and all parties reside within this judicial district and the claim arose within this judicial district.

## PARTIES

10. The Board operates a public school system within Camden County in the State of New Jersey and receives federal funds in connection with its obligation to educate students with disabilities pursuant to the IDEA.  Plaintiff is charged with the conduct, supervision, and management of the Haddonfield School District and is the local educational agency as defined by 20 U.S.C. § 1401.

11. Defendants M.L. and T.N. are, upon information and belief, the parents of the minor child J.N., who is a student enrolled in the Haddonfield School District and classified as eligible for special education and related services.

## STATUTORY BACKGROUND

12. The IDEA provides "[a]n opportunity for any party to present a complaint with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). This complaint is commonly referred to as a due process petition.

13. In New Jersey, due process petitions must be filed with the New Jersey Department of Education's Office of Special Education ("OSE").  N.J.A.C. 6A:14-2.7(c).

14. Once a due process petition is filed with the OSE, a 30-day resolution period is triggered. During that resolution period, the parties must participate in either a (1) resolution meeting among the parties and/or (2) mediation conducted by the OSE, unless both parties agree to waive the 30-day resolution period.  N.J.A.C. 6A:14-2.7.

15. If the parties do not resolve the matter within the resolution period, the party which filed the due process petition is entitled to an impartial due process hearing. 20 U.S.C. §1415(f). At this juncture, OSE then transmits the due process petition to the New Jersey Office of Administrative Law ("OAL") for adjudication by an Administrative Law Judge ("ALJ").  N.J.A.C. 6A:14-2.7(h)(10).

16. In New Jersey, school districts bear the burden of proof in a special education case regardless of whether the parents or school district filed the due process petition. N.J.S.A. 18A:46-1.1.

17. Parties aggrieved by an ALJ's decision may bring a civil action in the District Court seeking review of the administrative decision.  20 U.S.C. § 1415(i)(2)(A).

## FACTS

18. J.N. is a fourteen-year-old student currently enrolled in the District.

19. J.N. is eligible for special education and related services based on the "autistic" educational disability category.

20. J.N.'s most recent reevaluation occurred in January 2020, at which time the District and Defendants agreed that no new evaluations were needed.

21. During the 2021-2022 school year J.N. was placed in the Haddonfield Middle School.

22. J.N.'s individualized education program ("IEP") team convened on April 13, 2022, for an IEP review and annual review meeting.  At the meeting, the District proposed to change

J.N.'s placement from the Haddonfield Middle School to an out-of-district placement for the remainder of the 2021-2022 school year and for the 2022-2023 school year. Specifically, the District proposed to place J.N. at the Garfield Park Academy or Hampton Academy as appropriate placements.

23. The District observed J.N. exhibiting an increasing frequency of significant and disruptive behavioral incidents during the 2021-2022 school year. As a result of the observed behavioral incidents, the amount of time J.N. spent in the classroom was decreasing, meaning that his escalating disruptive incidents led to less exposure to the curriculum.

24. The increase of dysregulated behaviors and disruptive incidents observed by the District staff also created a concern for J.N.'s physical safety as he has put himself in potentially harmful situations, including leaving the school building without notice or supervision. The observed increase in dysregulated behaviors also created a concern for the safety of others, including faculty, staff, and other students.

25. The staff working with J.N. received training on J.N.'s behavior intervention plan and implemented that plan when attempting to deescalate his behavioral outbursts. Actions which the District took to assist J.N. with de-escalation included: behavioral momentum to complete small tasks, use of least to most prompts, use of verbal and nonverbal prompts, planned ignoring (including of insults and profanities), providing him with space when possible, blocking during attempted punches and kicks, vocally redirection and input, first/ then statements, choice making, and priming.

26. The District proposed to change J.N.'s placement to an out-of-district placement to meet J.N.'s need for a highly structured clinical/behavioral education program that is

specifically designed to meet his social and emotional needs. An out-of-district placement in such a setting provides the conditions for more intensive behavioral interventions and a setting in which variables can be manipulated in a way that is not possible in the Haddonfield Middle School.

27. Defendants made a request for additional behavioral support and a modified schedule. These requests were considered, but such supports were not sufficient given J.N.'s need for a highly structured clinical/behavioral education program to address his clinical needs, his demonstrated difficulty with deescalating behavioral incidents even when provided with support, and given his current resistance to reinforcers and available supports.

28. Defendants rejected the District's proposal to change J.N.'s IEP to an out-of-district placement.

29. The District could not maintain a placement for J.N. at the Haddonfield Middle School, and without a comprehensive reevaluation of J.N. cannot ascertain whether placement at the Haddonfield High School is possible due to several highly concerning events, including J.N.'s rapidly escalating, aggressive, unpredictable, and disruptive behaviors which severely compromised the safety, education and well-being of J.N. and other students, faculty, and staff in the District.

30. Due to several incidents demonstrating an escalating pattern of aggressive, unpredictable and disruptive behaviors, the District had no choice but to file a Request for Emergent Relief and Expedited Due Process on or about April 27, 2022, seeking to place J.N. in an alternative educational setting, with the goal of securing a permanent placement at an out-

of-district school able to provide him with a highly structured clinical/behavioral education program that is specifically designed to meet his social and emotional needs.

31. The District's Request for Emergent Relief and Expedited Due Process was properly filed with the OSE. After the requisite resolution period elapsed, the OSE transmitted the District's due process petition to the OAL, at which time OAL Docket No. EDS 03372-22 and ALJ Caliguire were assigned to the Board's Due Process Case.

32. On May 4, 2022, ALJ Caliguire granted the District's Request for Emergent Relief and placed J.N. in an alternative educational placement pending the outcome of the Board's due process case.

33. Initially, ALJ Caliguire considered the Board's filing as a Request for Emergent Relief and Expedited Due Process and therefore proceeded with the case on an expedited basis. To that end, in her May 4, 2022 decision granting the Board's Request for Emergent Relief, ALJ Caliguire scheduled an expedited due process hearing to commence on May 12, 2022. However, upon Defendants' counsel's motion, and over the Board's objection, ALJ Caliguire then improperly treated the case as a regular due process petition and did not proceed with the matter on an expedited basis. The ALJ's failure to proceed with the case as an expedited due process petition is reversible error.

34. The OAL scheduled a hearing on the Board's due process petition to commence on June 23, 2023.

35. On June 20, 2022, Defendants' counsel, Jamie Epstein, Esq, attempted to file with an "Answer & Counter Petition." The submission sought four forms of relief against the Board.

36.   On June 21, 2022, the Board filed a written opposition to Mr. Epstein's June 20, 2022, submission, and outlined the legal basis for which it would be improper for an ALJ to accept a counterclaim.

37.   ALJ Caliguire ruled against the Board's position but stayed the June 23, 2022, hearing and permitted the Board to file an interlocutory appeal on the question of whether the ALJ may consider requests for consequential relief as a counterclaim absent a properly filed petition for due process from the party seeking relief.

38.   Thereafter, On June 30, 2022, the Board filed a Complaint for Interlocutory Review with the United States District Court, which bore docket number 1:22-cv-04355.

39.   Defendants did not file a timely response to the Complaint and a default was entered on September 12, 2022.

40.   Following the Board's motion for the entry of a default judgment Defendants filed a request to vacate the default on October 24, 2022, together with a Motion to Dismiss the Complaint, Vacate the May 4, 2022, Administrative Order, and for Leave to File an Answer and Counterclaim.   The Board filed a response to Defendants' Motion on November 7, 2022, and oral argument was subsequently scheduled before the District Court.

41.   At oral argument on February 2, 2023, the Court admonished Defendants' counsel for unnecessarily delaying the proceedings, but dismissed the Board's Interlocutory Complaint for lack of jurisdiction.

42.   Thereafter, the ALJ scheduled hearing dates in the pending due process matter.

43.   The hearing in this matter took place over four days:  March 21, 22, and 23, 2023, and April 19, 2023.

44.   The Board presented the following witnesses:

    a)  Tracey Ann Matozzo, then- principal of the Haddonfield Middle School

    b)  Dr. Carmen Henderson, then-Director of Special Services for the District.

    c)  Dr. Sarah Woldoff, expert witness retained by the Board

    d)  George Mercado, BCBA with Brett DiNovi Associates

    e)  Timothy Cass, BCBA with Brett DiNovi Associates

45.   Defendants presented the following witnesses:

    a)  Dr. Christen Russell, expert witness retained by Defendants

    b)  Alexis Strobe, Senior BCBA with Behavior Interventions, Inc.

    c)  Rebecca Smith, RBT with Behavior Interventions, Inc.

    d)  M.J.L., Petitioner and mother of J.N.

46.   In the June 29, 2023 Final Decision, ALJ Caliguire made twenty-nine findings of fact based upon the documentary evidence provided by the parties.  See (Exhibit A at 4 – 15).

47.   The ALJ's decision then discussed the testimony of each witness.

48.   ALJ Caliguire then discussed the two videos submitted to the court.

49.   The first video was offered by Defendants as a purported depiction of an altercation between J.N. and an unidentified student.  This video was found to be flawed and unnecessary, and therefore was not admitted into evidence.  (Exhibit A at 42).

50.   The second video depicts the December 16, 2021, incident in which J.N. had a violent and aggressive outburst towards RBT Sedale Pennington and which necessitated his being restrained.  The ALJ outlines 21 specific observations from the video which corroborate the post-restraint report filed by Mr. Pennington.  See (Exhibit A at 43 – 46; J3).

51.  Next, the ALJ makes findings about the various witnesses' credibility, with the exception of M.L., whose credibility is not discussed.  See (Exhibit A at 46 – 51).

52.  The ALJ then makes 23 additional factual findings based upon her weighing of the evidence presented.  See (Exhibit A at 51 –55).

53.  The ALJ concluded that "the proofs do not demonstrate that continuing to allow J.N. to attend school in the District is substantially likely to result in injury to him or others."  See (Exhibit A at 59).

54.  Further, the ALJ found that, while J.N.'s conduct during the 2021-2022 school year was inappropriate and disruptive, there was no contemporaneous expert support for his removal from the District.  See (Exhibit A at 59).

55.  ALJ Caliguire dismissed the Board's Petition seeking removal of J.N. from the District and interim placement on home instruction pending acceptance and placement at an out-of-District school.

56.  In doing so, the ALJ refers to the statutory standard outlined in 20 U.S.C. § 1415(k)(3)(A), which requires a showing that a child is substantially likely to harm himself or others if not removed from the school setting.  See (Exhibit A at 59 – 60).

57.  Additionally, ALJ Caliguire found that evaluations of J.N. were "long overdue."  See (Exhibit A at 60).

58.  Therefore, ALJ Caliguire Ordered that the parties complete a full reevaluation of J.N. (Exhibit A at 60).

59.  The full reevaluation must be completed by "school personnel and outside professionals retained by the District with the consent of the parents."  (Exhibit A at 60).

60.    The reevaluation "must include an assessment by a professional specializing in dual exceptionality, children who are gifted . . . and disabled." (Exhibit A at 60).

61.    Further, the ALJ stated that the conclusions of such an expert may include recommendations for placement of the child. (Exhibit A at 60).

62.    However, the ALJ cautioned against Defendants stonewalling the conduct of reevaluations as they have done in the past, stating:

> The parents must not interpret the phrase "with the consent of the parents" as giving them veto authority over the District personnel and outside professionals chosen by [the Board] to conduct J.N.'s assessments. As stated in my December 7, 2022, final decision: Should the parents disagree with the results of evaluations conducted by the District, the procedures provided at N.J.A.C. 6A:14-2.5(c) will be available, and the parents may renew their request of independent educational evaluations.

> [(Exhibit A at 60-61).]

63.    The ALJ noted that J.N. should participate in the District's extended school year ("ESY") program as a means of reintegrating J.N. into the school setting.

64.    ALJ Caliguire indicated that J.N.'s presence in the ESY program would assist in making him available for his reevaluations.

65.    She specifically noted that, as part of the reevaluations J.N. should have a new FBA, and that, unlike the FBA conducted by Dr. Russell in J.N.'s home, the new FBA must be conducted in a school setting.

66.    On July 4, 2023, T.N. signed a consent form provided by the District which indicated his consent to the reevaluation of J.N.

67.    However, later on July 4, 2023, T.N. sent the District an email message revoking his consent, and indicating his opinion that the entire issue of J.N.'s reevaluation was before the District Court.

68.   To date, Defendants have not consented to the reevaluation of J.N., despite the District's repeated attempts to reevaluate him.

69.   Because of Defendants' refusal to comply with ALJ Caliguire's June 29, 2023, Order and resulting failure to consent to reevaluations, no reevaluations of J.N. have occurred.

70.   When evaluating the propriety of an out-of-district placement an ALJ must determine whether the proposed placement provides the student in question with a FAPE in the least restrictive environment ("LRE").

71.   Instead of applying the standard listed above ALJ Caliguire improperly found that she must determine whether J.N. was "'substantially' likely to harm himself or others if he was not removed from his school setting." (Exhibit A p. 60).

72.   It was this erroneous standard upon which the ALJ dismissed the Board's Due Process Petition, finding that the Board's proofs did not demonstrate that continuing to allow J.N. to attend school in the District would is substantially likely to result in injury to him or others. (P. 59-60).

73.   The standard used by the ALJ was applicable to the question of whether J.N. should be placed in an interim alternative educational setting during the Board's Request for Emergent Relief, not to the question of whether the April 13, 2022, IEP provided J.N. with a FAPE in the LRE.

74.   The ALJ applied an incorrect standard when determining whether J.N. should be placed in an out-of-district setting.

75.   The ALJ's failure to apply the correct legal standard in her June 29, 2023, decision constitutes reversible error.

76.     The ALJ erroneously concluded that permitting J.N. to remain in the District schools would not result in substantial likelihood of injury to himself or others in the school setting.

77.     In so finding, the ALJ relied upon the brief note from Dr. Mercetic, dated January 20, 2022, who opined that it was safe for J.N. to return to the classroom.  (Exhibit A at 54; J12; P38).

78.     The ALJ's June 29, 2023 Decision reflects that Dr. Mercetic was the only mental health professional to see J.N. following the December 16, 2021, incident in the Haddonfield Middle School auditorium.

79.     On January 20, 2022, Dr. Mercetic sent a brief note to the District indicating that it was safe for J.N. to return to the classroom.  (J12; P38).

80.     Dr. Mercetic's note was before the ALJ on May 4, 2022, when she issued her Order on Emergent Relief, and found that "there is sufficient evidence that J.N.'s behavior presents a substantial risk of injury to J.N., other students and staff and the Board has met the burden of establishing that irreparable harm may result if J.N. is returned to HMS." (5/4/22 Order).

81.     One consideration in determining the LRE involves evaluating the potentially harmful effects that a placement may have on the student in question and/or other students.  See N.J.A.C. 6A:14-4.2(a)(8)(iii).

82.     In her June 29, 2023 Decision, the ALJ made several findings related to the significant disturbance caused by J.N. to the educational environment of the Haddonfield Middle School.

83.  Therefore, the dismissal of the Board's Due Process Petition was inconsistent with the ALJ's findings establishing the existence of significant harmful effects on the in-district placement on J.N. and on other students.

84.  ALJ Caliguire found that, after returning to school in January 2022, following the December 16, 2021, incident, that J.N. acted in an increasingly aggressive and impulsive manner until April 2022, when he ceased attending the Haddonfield Middle School. (Exhibit A at 55).

85.  Further, the ALJ found that J.N. frequently eloped from school in the middle of the school day.  (Exhibit A at 55).

86.  The ALJ specifically found without question "the evidence shows that J.N.'s behavior, especially his disruption of his own and neighboring classrooms with uncontrolled profanity, has a negative impact on the educational environment of other students." (Exhibit A at 60).  She also concluded that J.N.'s conduct during the 2021-2022 school year was "inappropriate and disruptive."  (Exhibit A at 59).

87.  These findings demonstrate that an in-district placement is not the LRE for J.N., and that the ALJ should have granted the Board's Due Process Petition.

88.  Another consideration necessary under the LRE standard is whether the student in question may be satisfactorily educated in a general education classroom with supplementary aids and services.  See N.J.A.C. 6A:14-4.2(a)(8)(i).

89.  In her June 29, 2023, Decision, the ALJ made findings demonstrating that J.N. cannot be satisfactorily educated in a general education setting with supplementary aids and services in the Haddonfield Middle School.

90.   The ALJ noted that Defendants made 22 different requests for staffing and programming changes, and that their requests "underscore[d] that they were resisting an out-of-district placement while simultaneously demanding types of services that cannot be effectively provided by a large public school (e.g. BCBA assistance, two-to-one aides, social skills training with similarly disabled peers, private spaces in the building, personal sensory materials)." (Exhibit A at 54-55).

91.   The Decision also states that "J.N. needs a program and placement that will serve him academically and where he will be supported therapeutically." (Exhibit A at 55). Further, the ALJ recognized that "J.N. will be unable to achieve academic success in all subjects until he is getter able to control his negative behaviors." (Exhibit A at 58).

92.   The ALJ's dismissal of the Board's Due Process Petition is internally inconsistent with her findings that J.N. required aids and services unavailable in the District to achieve academic success.

93.   That inconsistency between the ALJ's findings and her ultimate denial of the Board's petition demonstrates that an in-district placement is not the LRE.

94.   Because the ALJ's findings are inconsistent with the denial of the Board's petition, the ALJ's dismissal of the Board's petition constitutes reversible error.

95.   Following the December 16, 2021, incident in the Haddonfield Middle School auditorium the District attempted to obtain a psychiatric evaluation of J.N. based upon his escalating behaviors.

96.   Those efforts were thwarted by Defendants, who refused to consent to any such evaluation.

97.     The ALJ stated in her findings that the District did not consult Dr. Woldoff, or any other mental health professional, prior to proposing a change in placement on April 13, 2022.

98.     There is no legal requirement that a district consult with a mental health professional prior to proposing an IEP with a change in placement.

99.     Despite implying that the District should have consulted a mental health professional before proposing the change in placement, the ALJ offers no citation to any legal requirement for the District to take such actions.

100.    The imposition on the District of a procedural requirement that is not found in any statute, regulation, or decisional law constitutes reversible error.

101.    The District proposed to place J.N. at either the Garfield Park Academy in Willingboro, NJ, or the Hampton Academy in Lumberton, NJ.

102.    The record contained substantial documentary and testimonial evidence, including evidence from the Board's expert witness, that both Garfield Park Academy and Hampton Academy provide therapeutic programs that address all of J.N.'s academic, emotional, and social needs.

103.    Dr. Woldoff opined that the records she reviewed demonstrated that J.N. was showing significant emotional dysregulation consistent with historical diagnoses of Disruptive Mood Dysregulation Disorder and that he requires a program that incorporates therapeutic support in the classroom, small group programming, positive behavior supports, data collection, and parent education programming.  (P53 at 4).

104.    She further opined that J.N. requires an environment that has additional clinical support and interventions where they can work through his behaviors using extinction techniques while not placing others at risk.  (P53 at 4).

105.   Dr. Woldoff testified that she is familiar with both Garfield and Hampton, and opined in her report that both out-of-district placements would be appropriate for J.N. as they each provide educational and clinical support to students that suffer from anxiety, struggle with social skills and peer relationships, mood disorders and other socioemotional concerns that interfere with a child's ability to fully function within a traditional academic setting.  (P53 at 4).

106.   Dr. Woldoff testified that Garfield Park's program has personnel who offset and intervene when it is therapeutically necessary and employs a comprehensive, integrative model called the TEACH family model that incorporates parent training, family therapy and management in the classroom.

107.   The ALJ determined Dr. Woldoff to be "professional and credible." (Exhibit A at 48).

108.   Dr. Carmen Henderson, the District's former Director of Special Education, testified that both Garfield Park Academy and Hampton Academy are appropriate placements for students who display any type of emotional dysregulation, mental health disorder and that the schools provide the structure necessary for a student who displays behavior that is disruptive to their education.

109.   The record demonstrates that Garfield Park Academy is a State-approved, private special education school that provides effective evidence-based special education services for students in grades K-12 who have a history of learning, social, emotional and behavioral challenges.  (P11).

110.   Services at Garfield Park Academy include intensive individual counseling, daily group counseling, family counseling, stress management, clinical social work services, and speech, occupational and physical therapy.  (P11).

111. With a social worker in each classroom, Garfield Park Academy provides intensive counseling, case management and family support/family counseling. (P11).

112. It offers several therapeutic program activities to facilitate emotional growth and learning. (P11).

113. Hampton Academy provides individualized, trauma-focused care and education to children and adolescents ages 6 and older. (P12).

114. The education program at Hampton Academy is designed for students who suffer from anxiety, school avoidance, poor social skills, mood disorder and that interrupt their ability to fully function in a traditional academic setting. (P12).

115. Hampton Academy's educational program provides individual and group counseling. (P12).

116. The record contains no evidence contradicting the fact that both Garfield Park Academy and Hampton Academy are capable of meeting J.N.'s academic and therapeutic needs.

117. ALJ Caliguire found that J.N. requires a placement that will serve him academically and where he will be supported therapeutically.

118. Despite all of this direct evidence in the record, the ALJ erroneously found that there was no direct evidence in the record that either Garfield Park Academy or Hampton Academy were capable of meeting J.N.'s educational needs. (Exhibit A at 55).

119. The ALJ made no factual findings, or even identified any evidence in the record which supported her conclusion that the April 13, 2022, IEP failed to offer J.N. a FAPE in the LRE, or an opportunity for significant learning.

120.   The record demonstrates that the District proposed a psychiatric evaluation of J.N. in December 2021 given his escalating behaviors and that the parents refused to consent to the evaluation.  (P55; P56).

121.   Dr. Henderson testified that the request for a psychiatric evaluation was made because there had been an escalation in J.N.'s behaviors and the District sought to obtain direction from a medical professional so that it would be able to appropriately program for J.N.

122.   In the June 29, 2023, decision the ALJ referred to her prior December 7, 2022, decision in a related matter, in which the ALJ ordered full evaluations of J.N. to be conducted. See (Exhibit A at 60; 60 n.44).

123.   However, the ALJ failed to note that Defendants refused to consent to any evaluations after the District proposed a reevaluation plan in compliance with the ALJ's December 7, 2022, Order.

124.   The District informed the ALJ of the District's compliance and of the parents refusal but she refused to consider the information.

125.   The record does not contain any evidence contradicting these facts.

126.   Despite these uncontroverted facts in the record, the ALJ erroneously found that the District failed to reevaluate J.N. in light of his behavioral issues.  (Exhibit A at 55).

127.   The ALJ also failed to find that the fault for J.N.'s lack of evaluations rested with Defendants, who thwarted the District's efforts to conduct evaluations of J.N. at every turn.

128.   The ALJ erred when she concluded that completion of a functional behavior assessment ("FBA") was necessary prior to the District proposing removal of J.N.

129.  The record demonstrates that the function of J.N.'s behaviors was already known to everyone involved at the time of the incidents in December 2021 and April 2022.

130.  Dr. Henderson testified that the IEP team determined, with the consent and agreement of Defendants, that a new FBA was unnecessary given that the functions of J.N.'s behaviors were already known.

131.  Dr. Henderson also testified that behavioral data was collected on J.N. by the District and its agents daily.   This data was used to inform the ongoing development and implementation of J.N.'s behavior intervention plan ("BIP").

132.  There was also no need to conduct an FBA after J.N.'s return to school following the December 16, 2021, incident in the Haddonfield Middle School auditorium.

133.  Following the incident in the auditorium J.N. was out of school for 8 full school days and 2 half school days before returning on January 10, 2022.  (P54).

134.  The District conducted a manifestation determination meeting on January 11, 2022, after J.N. had already returned to school.

135.  J.N. was not out of school for more than 10 consecutive school days.  Therefore, no change of placement occurred, and there was no requirement that a new FBA be conducted.

136.  In light of these facts, which are not contradicted in the record, the conduct of a new FBA would have been superfluous following the incidents in December 2021 and April 2022.

137.  In the December 16, 2021, behavior incident in the Haddonfield Middle School auditorium J.N. repeatedly swung at behavioral aide Sedale Pennington and attempted to throw a chair at Mr. Pennington and Principal Tracy Matozzo.

138.   There is no evidence in the record which contradicts the post-restraint report generated following the incident.

139.   In that post-restraint report, Mr. Pennington noted that a student sitting behind J.N. commented on what J.N. was viewing on his phone, and J.N. responded by swinging at the other student.  The video footage of the incident corroborates the narrative in the post-restraint report.

140.   The video surveillance footage does not include an audio component, so it is impossible to know what was said by the student who J.N. swung at.  (Exhibit A at 44).

141.   Defendants presented no testimony from any witness who was present at the incident, so there was no evidence to support a finding that J.N.'s behavior on December 16, 2021, was provoked.

142.   As demonstrated by the video and the post-restraint report, J.N.'s behaviors in this incident were not provoked.

143.   The ALJ focused on the auditorium incident to the near exclusion of the continuing series of escalating behaviors exhibited by J.N. in the classroom during April 2022.  None of these incidents were provoked, and all resulted in significant disruption to J.N.'s education, and to that of other students in the classroom.

144.   As a result of her focus on the December 16, 2021 auditorium incident, the ALJ failed to make specific findings regarding the escalating pattern of disruptive and aggressive behaviors exhibited at home in November 2021 and March 2022, and in school on April 6, 2022, April 8, 2022, and April 13, 2022.

145.   The ALJ's near exclusive focus on the December 16, 2021, behavior incident in the auditorium, and her resultant failure to make findings about the escalating pattern of

disruptive and aggressive behaviors exhibited at home in November 2021 and March 2022, and in school on April 6, 2022, April 8, 2022, and April 13, 2022, constitutes reversible error.

146. With regard to the altercation between J.N. and other students that occurred on December 9, 2021, ALJ Caliguire erroneously found that there was "no evidence that Timothy Cass prepared J.N. for the transition from lunch to recess and the possibility that an argument could follow the boys to playground."  (Exhibit A at 53).

147. However, the record contains no evidence that Timothy Cass failed to prepare J.N. the lunch-to-recess transition on December 9, 2021.

148. Likewise, the ALJ erroneously found that J.N. was not "first taught how to perform transitions from class to class with his peers for example: watching other students moving through the halls; discussing the emotions that could//would result; discussing methods of handling such emotions; discussing strategies that J.N. could employ if he felt crossed, worried, anxious, or scared; and discussing behaviors to avoid in the hassle such as pushing, running, yelling or cursing." (Exhibit A at 52).

149. With regard to transitions in general, and the December 9, 2021 altercation specifically, the record contains no evidence that Timothy Cass failed to teach J.N. how to prepare for transitions or failed to prepare J.N. for the lunch-to-recess transition on December 9, 2021.

150. As set forth in the summary of present levels of achievement and functional performance in the areas of counseling, occupational therapy, and speech/language section of J.N.'s IEP and the goals and objectives in speech/language, social/emotional/behavioral and

occupational therapy section of his IEP, the record demonstrates that J.N. was being taught all of the social skills outlined by the ALJ.   See (P60 at 11; P61 at 22-16).

151.   The record contains no evidence contradicting these facts.

152.   By focusing exclusively on the behavior assistants to the exclusion of instruction occurring in J.N.'s overall education program by other staff the ALJ lost sight of evidence that J.N. was being taught the skills the ALJ determined to be important.

153.   The ALJ's finding that J.N.'s behavioral assistants failed to properly assist him with social skills and de-escalation strategies is contradictory to the evidence in the record and constitutes reversible error.

154.   The ALJ failed to recognize and make findings regarding the de-escalation strategies employed by J.N.'s behavior assistants Sedale Pennington, Tim Cass and George Mercado during the December 16, 2021, April 6, 2022, April 8, 2022 and April 13, 2022 incidents.

155.   The record (J3) reflects that during the December 16, 2021, incident the following de-escalation strategies were used:

a)      Verbal and gestural redirection
b)      Blocking
c)      "Least-to-most" prompts
d)      Verbal and nonverbal prompts
e)      Seated safety physical restraint
f)      Test-releases during the period of restraint
g)      Planned-ignoring
h)      Providing physical space

156.   The record (J4) reflects that during the April 6, 2022, incident the following de-escalation strategies were used:

a)      Blocking
b)      Vocal redirection
c)      "First/then" statements

d)    Forced choice
e)    Planned ignoring of profanity and insults

157.    The record (J5) reflects that during the April 8, 2022, incident the following de-escalation strategies were used:

a)    "First/then" statements to prime access to leaving the classroom
b)    Planned ignoring of profanity and insults
c)    Redirection back to the assigned work

158.    The record (J6) reflects that during the April 13, 2022, incident the following de-escalation strategies were used:

a)    "First/then" statements to complete assignment
b)    Behavioral momentum to complete small tasks
c)    Blocking during attempted punches and kicks from J.N.
d)    Planned ignoring of profanity and insults
e)    Offering of choices as to whether to stay in classroom or leave
f)    Offering of choices as to what direction to walk to the office

159.    There is no evidence in the record contradicting these facts regarding what de-escalation methods were used during the December 16, 2021, April 6, 2022, April 8, 2022, and April 13, 2022, incidents.

160.    The ALJ's failure to make findings regarding the de-escalation strategies employed by J.N.'s behavior assistants in the December 16, 2021, April 6, 2022, April 8, 2022 and April 13, 2022 incidents constitutes reversible error.

161.    The District made changes to J.N.'s IEP on January 11, 2022, in an effort to address J.N.'s escalating behaviors.

162.    These changes included alterations of the behavior intervention plan.

163.    Dr. Henderson testified that changes included steps for staff to follow to respond to certain targeted behaviors, provision of visual cues, reinforcement that staff should use,

increase in the frequency of speech-language therapy to better address social skills and inclusion of a modified back to school schedule.

164.   Changes also included staff training on the behavioral plan, changes to the crises plan, inclusion of strategies for sensory decompression, addition of a counseling goal to focus on social skills, and introduction of additional people to work with J.N. <u>See</u> (P60 at 4-9).

165.   The record does not contain any evidence contradicting these facts.

166.   The ALJ erred by failing to make any findings about the changes made to J.N.'s IEP on January 11, 2022.

167.   The ALJ also failed to consider the efficacy of said changes in relation to the District's April 13, 2022, decision to propose an out-of-district placement for J.N.

168.   Dr. Henderson testified that all staff working with J.N. were trained on his behavior plan.

169.   The staff receiving this training included J.N.'s teachers, one-to-one assistant, case manager and the building principal. (P2, at ¶¶ 3, 4; P3 at ¶¶ 3, 4; P8, P9, P10).

170.   The record does not contain any evidence contradicting these facts.

171.   The ALJ erred in failing to make any findings regarding the District's training of staff working with J.N.

172.   Defendants' witness, Dr. Christine Russell testified that she had no recollection or knowledge of several factors that were highly relevant to the Board's decision to propose an out-of-district placement for J.N.

173.   Dr. Russell testified that she had no recollection of any instances in which J.N. was physically aggressive towards students, staff, or his own mother.

174.   Dr. Russell testified that she had no recollection of the basis for the Board's Petition for Emergent Relief.

175. Dr. Russell testified that she had no recollection of the fact that J.N.'s parents had attempted to have him placed in a residential facility in November 2021.

176. Neither Dr. Russell's report nor her testimony contains any opinion about the District's handling of the behavior incidents which occurred on December 16, 2021, April 6, 2022, April 8, 2022 and April 13, 2022.  Despite Dr. Russell's report and testimony being silent on these relevant facts, the ALJ relied upon the testimony, report, and recommendations of Dr. Russell.

177. The ALJ's reliance on the testimony, report, and recommendations of Dr. Russell constitutes reversible error.

## FIRST COUNT

178. Plaintiff repeats and re-alleges each and every allegation set forth in this Complaint with the same force and effect as though each allegation was fully set forth at length herein.

179. As set forth above, the record demonstrates that Plaintiff filed the underlying matter as a request for emergent relief and an expedited due process petition.

180. ALJ Caliguire initially scheduled a hearing in the underlying due process matter to occur on an expedited basis consistent with the Board's request for an expedited due process hearing pursuant to 20 U.S.C. § 1415(k)(4)(B) and N.J.A.C. 6A:14-2.7(*o*).

181. ALJ Caliguire then converted the expedited due process hearing to a non-expedited hearing at Defendants' request, and over the Board's objection.

182. The change in schedule from an expedited hearing to a non-expedited hearing caused significant delays in the conduct of the due process hearing.

183.   ALJ Caliguire abused her discretion and failed to comply with the law when she converted the Board's due process petition from an expedited hearing to a non-expedited hearing at Defendants' request.

184.   ALJ Caliguire's conversion of the Board's due process petition from an expedited hearing to a non-expedited hearing was improper, inconsistent with the law, and constitutes reversible error.

**WHEREFORE**, Plaintiff Haddonfield Borough Board of Education respectfully demands judgment and relief as follows:

i)      Entry of an Order finding that ALJ Caliguire abused her discretion and violated the law by converting the Board's due process petition from an expedited hearing to a non-expedited hearing;

ii)     Entry of an Order reversing ALJ Caliguire's June 29, 2023, Decision denying the Board's Due Process Petition;

iii)    Entry of an Order declaring that the Board is a prevailing party in this matter and in the Due Process litigation before ALJ Caliguire;

iv)     An award of attorneys' fees and costs for the Board; and

v)      Such other relief as the Court deems just and appropriate.

## <u>SECOND COUNT</u>

185.   Plaintiff repeats and re-alleges each and every allegation set forth in this Complaint with the same force and effect as though each allegation was fully set forth at length herein.

186.   As set forth above, the record before the ALJ demonstrated that J.N. could not be provided with a FAPE in the Haddonfield Middle School.

187.   The record shows that an out-of-district placement is necessary to meet J.N.'s academic and therapeutic needs.

188.   The record also demonstrates that the educational programs at both Garfield Park Academy and Hampton Academy would be able to meet J.N.'s social, emotional, academic, and therapeutic needs.

189.   The June 29, 2023, Order issued by ALJ Caliguire denying the Board's due process petition was improper.

**WHEREFORE**, Plaintiff Haddonfield Borough Board of Education respectfully demands judgment and relief as follows:

i)      Entry of an Order reversing ALJ Caliguire's June 29, 2023, Decision denying the Board's Due Process Petition;

ii)     Entry of an Order finding that the April 13, 2022, IEP proposed by the District provided J.N. with a FAPE in the LRE and that he should be immediately placed at the Garfield Park Academy or the Hampton Academy;

iii)    Entry of an Order declaring that the Board is a prevailing party in this matter and in the Due Process litigation before ALJ Caliguire;

iv)     An award of attorneys' fees and costs for the Board; and

v)      Such other relief as the Court deems just and appropriate.

## **THIRD COUNT**

190.   Plaintiff repeats and re-alleges each and every allegation set forth in this Complaint with the same force and effect as though each allegation was fully set forth at length herein.

191.   ALJ Caligiure issued a lawful Order on June 29, 2023 it is relates to requiring Plaintiffs to comply with the District in its reevaluation of J.N.

192.   ALJ Caligiure's June 29, 2023, Order required Plaintiffs to make J.N. available for the District's evaluations, and specifically provided that, if Plaintiffs disagreed with the evaluations then they could seek IEEs through the procedures provided in N.J.A.C. 6A:14-2.5(c).

193.   ALJ Caligiure's June 29, 2023, Order specifically stated that Defendants did not have any form of veto authority over the District's choice of evaluators to conduct J.N.'s reevaluation.

194.   Plaintiffs' subsequent refusal to consent to J.N.'s comprehensive reevaluation violates ALJ Caligiure's June 29, 2023, Order.

195.   The Court should Order Plaintiffs to comply with the ALJ's June 29, 2023, Order and consent to the comprehensive reevaluation of J.N.


   **WHEREFORE**, Plaintiff Haddonfield Borough Board of Education respectfully demands judgment and relief as follows:

   i)      Entry of an Order requiring Defendants to consent to the reevaluation of J.N., and further requiring Defendants to comply with the District's attempts to fully evaluate J.N. in all areas of suspected disability as directed in Judge Caliguire's June 29, 2023 decision;

ii)      Entry of an Order declaring that the Board is a prevailing party in this matter and

in the Due Process litigation before ALJ Caliguire;.

iii)      An award of attorneys' fees and costs for the Board; and

iv)      Such other relief as the Court deems just and appropriate.

CAPEHART & SCATCHARD, P.A.                    CAPEHART & SCATCHARD, P.A.
Attorneys for Plaintiff                       Attorneys for Plaintiff
Haddonfield Borough Board of Education        Haddonfield Borough Board of Education


_____*/s/ Sanmathi Dev*_____         _____*/s/Geoffrey N. Stark*_____
Sanmathi Dev, Esq.                            Geoffrey N. Stark, Esq.


Dated:__September 26, 2023_____               Dated:__September 26, 2023_____